# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Gerald Chambers,

    Plaintiff,

v.

Menard, Inc.,

    Defendant.

Case No. 14 C 2306

Judge John Robert Blakey

## **MEMORANDUM OPINION AND ORDER**

This case arises from a slip and fall at a Menards parking lot. Plaintiff Gerald Chambers sustained injuries and brought a single negligence claim against Defendant Menard, alleging that he fell on an unnatural accumulation of ice on Defendant's store parking lot. A second Defendant was previously dismissed without opposition from Plaintiff. [38].

Defendant now moves for summary judgment [53] based on the Illinois natural accumulation rule. That motion is granted.

**I.    Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary

judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Plaintiff. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

II. Facts[1]

This case arises from a February 25, 2015 slip and fall at a Menards parking lot at 14975 Lincoln Avenue, Dolton, Illinois. DSOF ¶ 7. The relevant facts are not in dispute.

Official weather records taken near the Menards parking lot show that the day before the fall, February 24, 2012, between 0.5 and 0.8 inches of snow fell. DSOF ¶ 23. There was almost no precipitation (0.02 inches, to be exact) the next day, February 25. DSOF ¶ 27; Record of Climatological Observations [55-6]. In light of the minimal snowfall, no snow or ice removal services or salting services were performed at the Menards parking lot either on February 24 or February 25, 2012. DSOF ¶¶ 20-22, 24. Defendant had a snow removal agreement with Royal Oaks Corporation ("Royal Oaks") (a third-party snow removal vendor) to remove

---

[1] Defendant's Local Rule 56.1 statement of facts [55] is referred to as "DSOF." Plaintiff did not respond to DSOF, so this Court deems them admitted. Fed. R. Civ. P. 56(e)(2). Plaintiff also has not submitted responsive Local Rule 56.1 statement of facts but rather has attached certain exhibits to his response brief. Despite this technical failure to comply with Local Rule 56.1, this Court nonetheless considers those exhibits to give Plaintiff the benefit of the doubt as the nonmoving party at summary judgment. Fed. R. Civ. P. 56(e); *see Steve v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) (recognizing that it is within this Court's discretion to apply Local Rule 56.1 strictly).

snow accumulations greater than 1 inch. DSOF ¶¶ 17-18; Snow Plowing Agreement [59-3] § 1. Defendant's employees themselves were not responsible for snow or ice removal in the parking lot. DSOF ¶ 15.

Plaintiff, at his deposition, described his fall and the condition of the Menards parking lot as follows. On February 25, Plaintiff arrived at the Menards store in Dolton. DSOF ¶ 8. The parking lot was snow-free and dry, but for a single patch of ice near where Plaintiff parked. DSOF ¶¶ 8, 11, 13-14. Plaintiff parked in a handicapped spot near the store entrance at approximately 10:30 a.m. DSOF ¶ 10. Upon exiting his vehicle, Plaintiff slipped and fell. DSOF ¶ 10. While sitting on the ground after falling, Plaintiff observed a thin film of dirt covering a patch of ice. DSOF ¶¶ 11-12.

Defendant infers that this patch of ice was the product of the snowfall on February 24 melting that day and re-freezing either the same day or on February 25, when temperatures dropped below freezing. [54] at 1-2. Official weather records show that on February 24, 2012 the temperature near Dolton, Illinois ranged from a low of 25 degrees Fahrenheit to a high of 35 degrees Fahrenheit, warmer than the freezing point (32 degrees Fahrenheit). DSOF ¶ 25. The temperatures were colder the next day: ranging from 25 to 29 degrees Fahrenheit. DSOF ¶ 26.

III. Analysis

Here, the issue at summary judgment is narrow: Did Plaintiff slip on a natural accumulation of ice, such that the Illinois natural accumulation rule applies

3

and bars his claim? This well-settled rule provides that property owners, such as Defendant, have no duty to remove natural accumulations of snow, ice or melted water from their premises. *Krywin v. Chicago Transit Authority*, 938 N.E.2d 440, 447-50 (Ill. 2010); *see also Baez v. Target Corp.*, No. 13-4258, __ F. Supp. 3d __, 2015 WL 753740, at *2-3 (N.D. Ill. Feb. 20, 2015) (collecting cases). The same rule does not apply to *unnatural* accumulations.

Plaintiff responds in two ways, arguing (1) that there was an unnatural accumulation of ice from a defect in the parking lot and, alternatively, (2) that Defendant undertook a voluntary duty to remove natural accumulations of ice. [59] at 5-9. This Court considers each argument in turn.

### A.   Parking Lot Defect

Plaintiff argues that there was an unnatural accumulation of ice from a defect in the parking lot. [59] at 8-9. In support, Plaintiff argues—in total—that "photographs … clearly show a defect in the parking lot in the exact location of [his] fall," that is, some portions of the parking lot look dark or are wet, others are dry. [59] at 2, 8-9. Plaintiff took these photographs on April 4, 2012, more than a month after the fall. DSOF ¶ 28; Chambers Dep. [55-1] at 24.

The photographs by themselves (and there is nothing more) are insufficient for Plaintiff to survive summary judgment under controlling case law from the Illinois Appellate Court. This case law imposes the burden on Plaintiff to present specific evidence at summary judgment showing the origin of the ice that was unnatural or caused by Defendant. *Gilberg v. Toys "R" Us, Inc.*, 467 N.E.2d 947,

4

950 (Ill. App. Ct. 1984); *see also Judge-Zeit v. General Parking Corp.*, 875 N.E.2d 1209, 1218 (Ill. App. Ct. 2007); *Tzakis v. Dominick's Finer Foods, Inc.*, 826 N.E.2d 987, 992 (Ill. App. Ct. 2005); *Rush v. Simon & Mazian, Inc.*, 513 N.E.2d 100, 103 (Ill. App. Ct. 1987); *Asmus v. Mac's Convenience Stores, LLC*, No. 09-2571, 2011 WL 613570, at *5 (N.D. Ill. Feb. 11, 2011). Photographs alone do not satisfy that standard. For example, the Appellate Court affirmed summary judgment in *Tzakis*, 826 N.E.2d at 989, 991, 993-94, where, as here, the only evidence of a purported defect in the store parking lot was the plaintiff's opinion and a photograph taken one to two months after the fall. The Court found that evidence to be nothing more than "speculation," and thus "simply not enough to create a genuine issue of material fact." *Id.* at 994.

Likewise, in *Rush*, 513 N.E.2d at 103-04, the Appellate Court affirmed summary judgment despite more compelling evidence of an unnatural accumulation than here: the plaintiff testified that there was ice and snow in a dip in the sidewalk intersection where he fell, and he presented a photograph of the intersection taken at a later date and showing a puddle of water where the dip purportedly was. The plaintiff argued that the photograph corroborated the existence of a dip. *Id.* at 102. The Court found this evidence unavailing. It failed to show the origin of the ice and snow the day of the fall, or the cause of the dip, as the plaintiff was required to do at summary judgment. *Id.* at 103.

Plaintiff points to *Avalos v. Pulte Home Corp.*, 474 F. Supp. 2d 961, 970-71 (N.D. Ill. 2007), to argue that photographs can be sufficient to create a genuine

5

issue of material fact. [59] at 8-9. *Avalos* is distinguishable, however, because it involved allegations of negligent snow removal in a driveway and not, as here, a design defect; and further, the photographs in *Avalos* were used to show the existence and character of ice patches in a driveway and not, as here, to infer an underlying defect in the parking space itself. 474 F. Supp. 2d at 970-71.

In *Avalos*, a truck braked while backing up onto a residential driveway; however, the truck did not stop but rather slid into the house, killing one of the truck passengers. *Id.* at 970. A police officer who investigated the accident testified that there were patches of ice or compacted snow in the driveway "in proximity to the wheels [of the truck]." *Id.* at 970 (brackets in original). Those patches allegedly caused the truck to slide. *Id.* In this factual context, which is not present here, the Court credited four photographs from the plaintiff that showed patches of ice on the driveway from which the jury could infer that the ice on the driveway was negligently cleared. *Id.* at 970-71.

Even if photographs could be sufficient at summary judgment, the ones here are not. *See* Photographs [55-7]. The photographs show a darkened patch of cement in the parking lot space where Plaintiff fell. Plaintiff infers a defect in the parking lot from the photographs, but nothing supports that inference. [59] at 8. There is no lay or expert testimony interpreting the photographs. Nor do the photographs themselves show the cause of the discoloration. Indeed, the photographs were taken on April 4, 2012, more than a month after the fall, and

taken on a day where there was rain—not ice, like on February 25—in the parking lot. DSOF ¶ 28; Chambers Dep. [55-1] at 24-26, 29.

At bottom, this Court finds no material issue of fact as to whether Defendant's parking lot had a defect. Plaintiff fails to identify what the purported defect in the Menards parking lot is, other than asserting that one exists. Nor do his photographs provide the answer. That is not enough to survive summary judgment.

### B. Voluntary Duty

Alternatively, Plaintiff argues that Defendant voluntarily assumed a duty to remove natural accumulations of snow in the parking lot by entering into a Snow Plowing Agreement with the third-party vendor Royal Oaks. [59] at 5-8. This argument fails both as a matter of law and fact.

As a matter of law, a defendant contracting for snow removal services does not create a voluntary duty to remove natural accumulations of snow except with limited exception. The principal case Plaintiff relies on shows one such exception. [59] at 3-5 (citing *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 411 N.E.2d 1168 (Ill. App. Ct. 1980)). The Court in *Schoondyke* found that the defendant condominium association had undertaken a voluntary duty to remove snow on behalf of owners and residents when that duty was written into the Condominium Bylaws. 411 N.E.2d at 1171-73.

Unfortunately for Plaintiff, the scope of *Schoondyke* has been cabined and distinguished from parking lot slip and fall cases like this one. As explained by the

Appellate Court in *Judge-Zeit*, 875 N.E.2d at 1217, the driving facts in *Schoondyke* were that through the Condominium Bylaws, the defendant condominium association had *de facto* entered into an agreement with the plaintiff (a non-owner resident in the condo) to remove natural accumulations of snow. By comparison, there is no such agreement with invitees, such as Plaintiff, when a company contracts with a third-party vendor to remove snow at a parking lot. *Judge-Zeit*, 875 N.E.2d at 1217. Having found *Schoondyke* inapplicable, the Court in *Judge-Zeit* affirmed summary judgment in favor of a parking lot management company in a slip and fall case, despite the existence of a snow removal agreement with a third-party vendor. 875 N.E.2d at 1217-19.

The Court in *Wells v. Great Atlantic & Pacific Tea Co.*, 525 N.E.2d 1127, 1128-29, 1131-33 (Ill. App. Ct. 1988), also found *Schoondyke* factually distinguishable and granted summary judgment in favor of the defendant store. The Court explained that the defendant store contracting for snow removal services only created a duty not to perform snowplowing negligently, and not a broader voluntary duty. *Id.* at 1131; *see also Asmus*, 2011 WL 613570, at *5-6 (distinguishing *Schoondyke* and granting summary judgment for defendant store).

Relatedly, Plaintiff argues that a voluntary duty arose from Menards employees walking and inspecting the store property. [59] at 2, 4-5. In support, Plaintiff cites deposition testimony from Kelly Reeves, Defendant's General Manager, who testified that she customarily walked the store property. Reeves Dep. [55-4] at 63-64. But Ms. Reeves said that there was no corporate policy that

8

she walk the store, *id.* at 63-64, 66, and even if there was, that would not create a voluntary duty.  In *Asmus*, 2011 WL 613570, at *6, the store guidelines required employees to remove snow from parking areas, yet the Court distinguished *Schoondyke* and granted summary judgment.  The Court found that "guidelines for employees [are] not a contract between a unit owner and a condo association," which gave rise to a voluntary duty.  *Id.* (internal quotations omitted).  This Court sees no reason to depart from that reasoning.

Turning now to the facts, even if Defendant's Snow Plowing Agreement with Royal Oaks created a voluntary duty, that duty nonetheless was not triggered here based on the terms of the Agreement.  The undisputed facts show that Defendant contracted with Royal Oaks to remove snow accumulations greater than 1 inch, DSOF ¶ 18; Snow Plowing Agreement [59-3] § 1, so any voluntary duty undertaken by Defendant naturally would be limited to snow accumulation beyond the 1 inch threshold.  That threshold was not met.  Official weather records taken near the parking lot showed that the snowfall on February 24, 2012, the day before the fall, was less than one inch; and there was almost no precipitation the next day.  DSOF ¶¶ 23, 27; Record of Climatological Observations [55-6].  Consistent with that minimal snowfall, Royal Oaks did not perform snow or ice removal services on February 24 and 25, 2012.  DSOF ¶¶ 20-22, 24.

For these two independent reasons, this Court finds that Defendant did not undertake a voluntary duty to remove all natural accumulations of snow.

## IV. Conclusion

Defendant's motion for summary judgment [53] is granted. Judgment is thus entered in favor of Defendant and against Plaintiff. Civil case terminated.

Dated: June 17, 2015

Entered:

_____
John Robert Blakey
United States District Judge